Eastern District of Kentucky
FILED

AUG 09 2006

AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 05-552-GWU

DONALD W. WATERS,                                        PLAINTIFF,

VS:                        MEMORANDUM OPINION

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,            DEFENDANT,

## INTRODUCTION

Donald Waters brought this action to obtain judicial review of an unfavorable administrative decision on his applications for Disability Insurance Benefits and for Supplemental Security Income.  The case is before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has established the following test for judicial analysis of benefit denial cases:

1.     Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled.  If no, proceed to Step 2.  See 20 C.F.R. 404.1520(b), 416.920(b).

2.     Does the claimant have any medically determinable physical or mental impairment(s)?  If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3.     Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities?  If yes, proceed to step 4.  If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 416.921.

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months?  If yes, proceed to Step 5.  If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of

1

impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix I (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.    Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform his kind of past relevant work? If yes, the claimant is not disabled. If no, proceed to step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.    Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(I).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1985).

In applying this analysis, it must be remembered that the principles applicable to judicial review of administrative agency action apply. Judicial review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence and in deciding whether the Commissioner employed the proper criteria in reaching his conclusion; the findings as to any fact, if supported by substantial evidence, shall be conclusive. Id. This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion"; it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Id.

One of the factors in the administrative record may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Houston v. Secretary of Health

2

and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).

Additional information regarding the specific steps of the seven-part Garner test cited earlier is also valuable.

In step three of the analysis, the issue is whether the plaintiff has a "severe impairment," defined by the regulations to mean one which significantly limits one's ability to perform basic work activities, which is in turn defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. 404.1521, 416.921. The Sixth Circuit has definitely cautioned against overly-restrictive interpretation of this term. Farris v. Secretary of Health and Human Services, 773 F.2d 85 (6th Cir. 1985). The burden is upon the plaintiff, however, to provide evidence complete and detailed enough to enable the Commissioner to determine that there is such a "severe impairment," Landsaw v. Secretary of Health and Human Services, 803 F.2d 211 (6th Cir. 1986).

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that she or he is unable to return to this work. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways that the Commissioner may meet his burden is through

3

the use of the medical-vocational guidelines.

However, the medical vocational guidelines themselves may not even be fully applicable if a non-exertional impairment is involved. When this happens, the Commissioner may use the rules as a framework for decision-making. 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e). It may often be required for the agency to consult a vocational specialist in such cases. Damron v. Secretary, 778 F.2d 279 (6th Cir. 1985). Nonetheless, the finding by the Commissioner that a non-exertional impairment does not significantly affect the level of work that a claimant can do must be tantamount to a finding that this additional impairment is non-severe. Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir. 1985).

One of the residual functional levels used in the guidelines, called "medium" level work, involves lifting no more than fifty pounds at a time with frequent lifting or carrying of objections weighing up to twenty-five pounds; a person capable of this level of exertion is also deemed capable of performing at lesser levels of "light" and "sedentary." 20 C.F.R. 404.1567(c), 416.967(c). "Light" level work, involves the lifting of no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is in this category when it involves a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of work activity, must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b), 416.967(b). A "sedentary" level job encompasses the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a). The guidelines make it clear that disabilities such as postural restrictions or the

4

lack of bilateral manual dexterity compromise a person's ability to do a full range of this type of work; they also indicate that a finding of disabled is not precluded when the person is not able to do a full range of sedentary work, even if that person is a "younger individual." 20 C.F.R. Part 404, Subpart P, Appendix 2, Rules 200.00(e), 201.00(h).

Substantial evidence may be produced through reliance on the testimony of a vocational expert in response to a hypothetical question, but only "if the question accurately portrays (plaintiff's) individual physical and mental impairments." Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

DISCUSSION

The Administrative Law Judge (ALJ) concluded that Waters, a 47 year-old former factory worker with a 6th grade education, suffered from impairments related to chronic elbow pain, carpal tunnel syndrome, chronic obstructive pulmonary disease, a panic disorder, and a depressive disorder. (Tr. 16, 19). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional functional capacity to perform a restricted range of light level work. (Tr. 23). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 23). The ALJ based this decision, in part, upon the testimony of a vocational expert. (Tr. 22).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence. Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Anne Thomas

5

included an exertional limitation to light level work along with such non-exertional limitations as (1) an inability to more than occasionally climb or crawl; (2) an inability to ever reach overhead with the right upper extremity; (3) a need to avoid exposure to dust, smoke, chemicals, fumes, and noxious gases; and (4) a "limited but satisfactory" ability to relate to co-workers, deal with the public, interact with supervisors, and relate predictably in social situations. (Tr. 284). In response, the witness identified a significant number of jobs in the national economy which could still be performed. (Tr. 285). Therefore, assuming that the vocational factors considered by Thomas fairly depicted Water's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly depicted Waters' physical condition. Dr. Ronald Burgess, a treating source, indicated in January of 2002 that the plaintiff could return to his past work with no restrictions as of February 1, 2002. (Tr. 131). The doctor reported finding no reason to change this opinion in October of 2002. (Tr. 130). The hypothetical question was also consistent with the functional restrictions identified by Dr. James Ross (Tr. 178-188) and Dr. Sudideb Mukherjee (Tr. 189-197), the non-examining medical reviewers. Such treating and examining sources as Dr. Lloyd Blake (Tr. 137-140), Dr. James Wilson (Tr. 141-144), and the staff at Cardiovascular Specialists (Tr. 233-248) did not report the existence of more severe physical restrictions than those included in the hypothetical question. These reports provide substantial evidence to support the administrative decision.

Dr. James Templin did note a number of restrictions concerning the use of the right arm which were not specifically included in the hypothetical question. These restrictions were outweighed by the opinion of Dr. Burgess, the treating

6

physician.[1]  Thus, this opinion was not binding on the ALJ.

Dr. William Barrett, an examining consultant, evaluated Waters' breathing problems and reported a "moderate" environmental limitation concerning exposure to temperature extremes and humidity.  (Tr. 151).  These restrictions were not presented in the hypothetical question.  (Tr. 151).  The plaintiff's other treating and examining sources did not identify such restrictions and neither did either of the medical reviewers.  Dr. Barrett noted that the plaintiff had a history of smoking for many years and had been unsuccessful in several attempts to quit.[2]  (Tr. 149).  In _Mullins v. Secretary of Health and Human Services_, 836 F.2d 980 (6th Cir. 1987), the court found that in view of a claimant's smoking habit, "it was difficult to invision [sic] a severe and environmental restriction imposed by a pulmonary condition."  Mullins, 836 F.2d at 985.  The claimant has not raised the omission of this factor from the hypothetical question as an issue.  Therefore, under these circumstances, the Court finds no reversible error.

The ALJ dealt properly with the evidence of record relating to Waters' mental condition.  Psychologist Gary Maryman examined the plaintiff and opined that he would be somewhat limited in dealing with the general public.  (Tr. 148).  The hypothetical question was fully consistent with this restriction.  The question was also compatible with the mental limitations indicated by Psychologists Jay Athy (Tr. 159-160) and Lea Perritt (Tr. 198-199), the non-examining medical reviewers.   Therefore, substantial evidence supports this portion of the

---

[1]Dr. Burgess appears to have reiterated his opinion in October, 2002 that the plaintiff had no restrictions relating to his arm in response to this August, 2002 opinion of Dr. Templin.  (Tr. 130).

[2]The claimant indicated that he had again quit smoking in May of 2004, shortly before the June hearing.  (Tr. 271).  It is unclear how successful this most recent attempt to quit smoking has been.

7

administrative decision.

Waters argues that the ALJ did not properly evaluate his subjective pain complaints.   Pain complaints are to be evaluated under the standards announced in Duncan v. Secretary of Human Services, 801 F.2d 847, 853 (6th Cir. 1986): there must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

In the present action, Waters was found to be suffering from a potentially painful condition.   However, even if he could be found to have satisfied the first prong of the so-called Duncan test, the claimant does not meet either of the alternative second prongs.   Although electrodiagnostic testing indicated carpal tunnel syndrome, Dr. Burgess thought that this problem was not symptomatic. (Tr. 134).   Despite the plaintiff's elbow problems, the doctor still believed that the claimant could perform his past work without restrictions.   Dr. Barrett found no joint deformities, decreased range of motion, muscle spasms or motor deficit upon physical examination.   (Tr. 151).   Grip strength was normal.   (Tr. 151). Thus, the medical evidence does not appear sufficient to confirm the severity of the alleged pain and objective medical evidence would not appear to be consistent with the plaintiff's claims of disabling pain.   Therefore, the ALJ would appear to have properly evaluated Waters' pain complaints.

The undersigned concludes that the administrative decision should be affirmed.   Therefore, the Court must grant the defendant's summary judgment motion and deny that of the plaintiff.   A separate judgment and order will be

8

issued simultaneously consistent with this opinion.

This the ___9___ day of August, 2006.

G. WIX UNTHANK
SENIOR JUDGE

9